In the Matter of D. E.,
aka JT. E.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. B.,
*Appellant.*
Multnomah County Circuit Court
9709824113
Petition Number 110043M

In the Matter of A. E.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. B.,
*Appellant.*
Multnomah County Circuit Court
9709824114
Petition Number 110043M

In the Matter of T. E.,
aka T. E., Jr.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. B.,
*Appellant.*
Multnomah County Circuit Court
9709824115
Petition Number 110043M
A155325

333 P3d 335

G. Valerie Colas, Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Kimberlee Petrie Volm, Deputy Public Defender, Office of Public Defense Services.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and Schuman, Senior Judge.

TOOKEY, J.

## TOOKEY, J.

Mother appeals from a September 13, 2013, judgment of the juvenile court assuming jurisdiction under ORS 419B.100(1)(c)[1] over three of her five children, JT (age 8), A (age 5), and TJ (age 3),[2] based on allegations that mother (1) has "substance abuse issues [that] impair her judgment and ability to provide safe, consistent, and appropriate care for the children;" (2) "fails to provide for the medical, dental, physical, and educational needs of the children;" and (3) "has failed to provide preventative or needed dental care."[3]

The Department of Human Services (DHS) has been involved with the family since 2011, when the court assumed jurisdiction based on concerns that mother and father had neglected JT's dental and medical needs, the children were not attending school, the children had lead poisoning, the children were not attending medical appointments, the family home was unsanitary, and father had used methamphetamine. DHS helped mother find a new home, and mother participated in services and agreed to follow up with the children's medical needs. Conditions improved, and the court dismissed jurisdiction in July 2012.

The family came to DHS's attention again in May 2013, when concerns were raised again about the children's health and other circumstances. At that time, father apparently was not living in the family home on a full-time basis. JT, who has a seizure disorder, had missed a lot of school, and many of JT's absences were attributable to mother's failure to follow up on the school's request for information from JT's doctor. JT also had speech delays, which DHS believed

---

[1] ORS 419B.100(1)(c) provides that the juvenile court has exclusive jurisdiction in any case involving a person under age 18 "[w]hose condition or circumstances are such as to endanger the welfare of the person or of others[.]"

[2] The state originally asserted jurisdiction over all five children, but mother subsequently moved to dismiss the petitions regarding the two oldest children, and the court granted the motion.

[3] DHS also asserted jurisdiction as to father, based on his admission that he is aware of mother's failure to appropriately care for the children's medical and dental needs and failed to protect the children while they were in mother's custody, and that father needs DHS assistance in keeping the children safe while in the process of asserting custody. Father does not challenge the jurisdictional judgment.

could be attributable to his lack of consistent school attendance. The children were often left under the supervision of their older siblings while mother slept, and their eating habits were unhealthy. The children's doctor had a concern that A and TJ were not growing and was also concerned that TJ had speech delays.

At a dental visit in March 2012, A had cavities and TJ's front teeth were extensively decayed (as JT's had been in 2011). The dentist referred the children to a pedodontist but, by May 2013, the children still had not yet seen a pedodontist, and their dentist diagnosed them with dental neglect. Both parents declined to take TJ to the dentist, expressing concern about him undergoing oral surgery at such a young age, and noting that JT had been older at the time he underwent surgery to alleviate the same condition.[4] Mother told the caseworker that she believed TJ did not need dental care unless the condition affected his eating.

The children were taken into custody in May 2013. Shortly thereafter, mother submitted to a urinalysis which revealed methamphetamine in her system. In June 2013, JT and A were evaluated at CARES Northwest (CARES), which provides medical assessments for concerns related to child abuse and neglect. The examining physician opined that both A and JT had been neglected.

After a hearing over three days in August and September 2013, the juvenile court assumed jurisdiction over the children with respect to mother on three grounds:

"A. The mother's substance abuse issues impair her judgment and ability to provide safe, consistent, and appropriate care of the children[;]

"B. The mother fails to provide for the medical, dental, and educational needs of the children[;]

"C. The mother has failed to provide preventive or needed dental care[.]"

The court also assumed jurisdiction as to father, but noted in the jurisdictional judgment that the children had been

---

[4] TJ underwent oral surgery shortly before the final day of the jurisdictional hearing.

placed in father's custody with a safety plan. Only mother has appealed the jurisdictional judgment.

The state has notified the court that, after a permanency hearing on March 6, 2014, the court terminated jurisdiction and the wardship, and the state therefore seeks to dismiss mother's appeal of the jurisdictional judgment as moot. Mother objects, contending that the circumstances underlying the jurisdictional judgment have collateral consequences. In particular, mother contends that the jurisdictional judgment, which includes findings of substance abuse and neglect, could affect a pending domestic relations matter (in the same court) in which father seeks sole legal custody of the children. As we recently explained in *Dept. of Human Services v. B. A.*, 263 Or App 675, 330 P3d 47 (2014) (citing *State v. Hauskins*, 251 Or App 34, 36, 281 P3d 669 (2012)), a collateral consequence for purposes of mootness is a "probable adverse consequence" as a result of the challenged action. Whether an underlying jurisdictional judgment presents collateral consequences will depend on the particular circumstances of the case. *Id.* We agree with mother that the effect of the underlying jurisdictional judgment on the pending custody matter is a probable adverse consequence that prevents this appeal from being moot. *See Dept. of Human Services v. G. D. W.*, 353 Or 25, 32, 292 P3d 548 (2012) (appeal of jurisdictional judgment was not moot after dismissal of juvenile court's jurisdiction, because findings in judgment could affect court's custody order and parenting time decision). We therefore deny the state's motion to dismiss the appeal as moot.

We turn to the merits of the appeal of the jurisdictional judgment. The juvenile court found that mother had seriously neglected the children. The court's findings also reflected disbelief of mother's assurances that the neglect would not recur. In its ruling from the bench, the court expressed concern that there was a "pattern * * * that without DHS's involvement * * * the issues that brought the children into DHS's attention, both the first and the second time, will continue." The court expressed concern that, despite a urinalysis that was positive for methamphetamine, mother denied methamphetamine use and had apparently hidden

her methamphetamine use from those who were closest to her; the court was concerned that she might still be doing so. The court expressed the view that, although mother could handle TJ's seizure disorder

> "right now I'm not sure you will, because I agree with the state that you haven't shown the insight of the—even at minimally adequate, amount of time, effort and energy that goes into keeping children safe, keeping them out of harm's way.
>
> "And so I find that the state met its burden of proof under the totality of the circumstances. I think that there is a reasonable likelihood of harm currently if the children would be returned. I think the children need the court's protection. And I am—I hope that something changes within that it's—it really feels like right now, maybe because you are smart, that you've figured out the system, what you need to say and do to get DHS out of your life."

Mother appeals from the judgment but has not requested *de novo* review. ORS 19.415(3)(b); ORAP 5.40(8)(c). Accordingly, in reviewing the juvenile court's judgment, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

The state has the burden to prove the allegations supporting jurisdiction by a preponderance of the evidence. ORS 419B.310(3). As we recently explained in *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 61-62, 308 P3d 307 (2013):

> "Juvenile court jurisdiction is appropriate under ORS 419B.100(1)(c) when a child's condition or circumstances endanger the welfare of the child. To 'endanger' the welfare of a child means to expose the child to conditions or circumstances that present a current threat of serious loss or injury. *Dept. of Human Services v. M. Q.*, 253 Or App 776, 785, 292 P3d 616 (2012). The 'key inquiry in determining whether condition[s] or circumstances warrant jurisdiction is whether, under the totality of circumstances, there is a reasonable likelihood of harm to the welfare of the child,'

*Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010) (internal quotation marks omitted), and DHS has the burden to demonstrate a nexus between the allegedly risk-causing conduct and the harm to the child, *Dept. of Human Services v. D. S. F.*, 246 Or App 302, 314, 266 P3d 116 (2011) ('Evidence that a child has been exposed to a parent exhibiting the adverse effects of intoxication is not, in and of itself, a basis for juvenile court jurisdiction over a child[;] * * * there must be evidence that the exposure puts the child at risk of serious loss or injury.'). In addition, DHS has the burden to show that the risk of harm is present at the time of the hearing and not merely speculative. *M. Q.*, 253 Or App at 785 (citing *Dept. of Human Services v. A. F.*, 243 Or App 379, 386, 259 P3d 957 (2011))."

(Brackets in *C. J. T.*) Mother asserts that the evidence does not support the juvenile court's finding that DHS has established the allegation of substance abuse. Mother notes that, apart from one positive urinalysis in May 2013, all of mother's urinalyses since that time have been clean and, after a drug and alcohol assessment, mother was not referred for substance abuse treatment. Mother contends, further, that, even if the record does support a finding of substance abuse, there is no evidence that that conduct exposes the children to harm.

We agree with mother that the allegation of substance abuse was not established. Shortly after removal of the children in May 2013, mother had the single urinalysis that was positive for methamphetamine but every urinalysis after that date was negative. There is no evidence in support of a determination that mother had a substance abuse problem at the time of the jurisdictional hearing in September 2013. *See Dept. of Human Services v. E. M.*, 264 Or App 76, 82-83, 331 P3d 1054 (2014) (DHS failed to prove that "mother had a substance abuse problem at the time of the [jurisdictional] hearing"); *Dept. of Human Services v. R. L. F.*, 260 Or App 166, 173, 316 P3d 424 (2013) (DHS failed to prove that the father currently used alcohol, or that his use exposed the child to a threat of harm, at the time of the jurisdictional hearing); *M. Q.*, 253 Or App at 787 (evidence of a history of methamphetamine use does not support an inference of current use; jurisdiction cannot be based on speculation that parent's past problems persist at the

time of the jurisdictional hearing in the absence of evidence that the risk, in fact, remains). Accordingly, the substance abuse allegation does not provide a basis for the court's jurisdiction.

Additionally, mother contends that, although the other circumstances that existed in May 2013 when DHS took the children into custody may have supported a finding of jurisdiction, those circumstances no longer existed at the time of the hearing. Mother points to evidence that, since July 2013, she has changed her attitude and improved her understanding, has been participating in services offered by DHS, has attended the children's medical appointments, and has accepted responsibility for the medical and dental neglect issues that caused DHS to become involved.

Mother contends that the evidence also shows that the children's circumstances have improved significantly from when the children were taken into custody in May 2013 to the time of the jurisdictional hearing in September 2013. The children have been living with father since August 30, 2013, and their grandmother had volunteered to ensure that they attend their future appointments. At the time of trial, the children were attending school and their health was being managed. Mother contends that, in light of mother's improvements, along with father's and the grandmother's ability to also provide for the children's care, *see State ex rel Dept. of Human Services v. Smith*, 338 Or 58, 86, 106 P3d 627 (2005) (there is no requirement that a parent be able to care for a child "independently"), the totality of the circumstances does not support the juvenile court's conclusion that the children's conditions and circumstances at the time of the hearing exposed them to a current threat of serious loss or injury likely to be realized. *See A. F.*, 243 Or App at 386 (stating standard).

Finally, mother expresses concern that the "lack of insight" rationale relied on by the trial court is remarkably similar to the "failure to internalize" justification that we disapproved of in *Dept. of Human Services v. J. M.*, 260 Or App 261, 268-69, 317 P3d 402 (2013). She contends, in any event, that the evidence does not support a finding that she

lacks insight into the cause of the circumstances that created the need for DHS's involvement.

We conclude that DHS has made the necessary showing of a risk of harm to the children. Although there is evidence that supports mother's contention that, at the time of the hearing in September 2013, the children's circumstances had improved significantly over what they had been when the children were taken into custody three months before in May 2013, the improved circumstances are primarily the consequence of the children having been removed from mother's care. Further, father, with whom the children are currently living, does not dispute the court's jurisdiction, and has stipulated that he needs DHS to be involved to assist him in keeping the children safe.

There is also evidence that supports the juvenile court's findings that, although the children's circumstances have improved, the children are in need of the court's protection because of the risk that, if the children are returned to mother's care, circumstances will deteriorate. As noted, this is not the first time that the family has been involved with DHS. In March 2011, the juvenile court took jurisdiction under similar circumstances that then improved with DHS's involvement. But, after the children were returned and jurisdiction was dismissed in July 2012, circumstances deteriorated, and DHS became involved again less than one year later. Included among the alleged bases for jurisdiction this second time is the same type of dental neglect that provided a basis for jurisdiction in 2011, but involving a different child. Service providers expressed concern that, although mother becomes actively engaged in parenting while DHS is involved, she lacks insight into the cause of the circumstances that led to DHS's involvement, creating a risk that when DHS is no longer involved, there will be a return to those circumstances. The trial court relied on that rationale as a justification for assuming jurisdiction, and we conclude that it is supported by legally sufficient evidence in the record.

Contrary to mother's contention, we do not equate the trial court's reference to mother's lack of insight with the "failure to internalize" rationale that we disapproved of in *J. M.*,

260 Or App at 267-68. In that case, DHS expressed concern that, although the father expressed an intention to use appropriate discipline techniques, he had not internalized DHS's instruction. We rejected the inference that, because he had not internalized social norms against inappropriate corporal punishment, he was unlikely to conform to them. We said that "[t]he dispositive question *** is not what father believes but what he *** is likely to *do*." *Id.* at 268 (emphasis in original). Here, mother's permanency caseworker linked mother's lack of insight to the risk of harm. The caseworker testified that mother continues to minimize the severity of the circumstances that led to DHS's involvement, giving rise to a risk that it could occur in the future. The evidence supports the trial court's finding that mother's lack of insight gives rise to a risk of harm. We conclude, therefore, that the juvenile court did not err in assuming jurisdiction.

Motion to dismiss denied; jurisdictional judgment remanded for dismissal of jurisdictional ground of substance abuse; otherwise affirmed.