Submitted February 11, reversed March 18, 2015

In the Matter of J. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. H.,
*Appellant.*

Klamath County Circuit Court
1400338JV;
Petition Number 1400338;
A157877

346 P3d 527

Peter Gartlan, Chief Defender, and Shannon Storey, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Judy C. Lucas, Senior Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

LAGESEN, J.

**LAGESEN, J.**

Mother appeals from a dependency judgment asserting jurisdiction over her 5-year-old son, J. The juvenile court concluded that jurisdiction over J as to mother[1] was warranted on three bases:

"1. [Mother] is aware of the allegations against her husband, * * * that he is a convicted, untreated sex offender and still does not believe that he poses a risk to the child. This condition places the child under a threat of harm.

"2. [Mother] is unwilling to protect the child from unauthorized contact with her husband * * * until [her husband] is deemed safe to have contact with children. This condition places the child under a threat of harm.

"3. [Mother's] mental health issues, including an attempted suicide on 06-24-14, interferes with her ability to safely parent the child. This condition places the child under a threat of harm."

On appeal, mother does not dispute that she permitted her husband to have contact with J, even though her husband is an untreated sex offender who is subject to a no-contact-with-minors condition of either post-prison supervision or probation. She also does not dispute that she has some mental health issues, or that, several months before the jurisdictional hearing, she responded to the removal of J from her care by swallowing a bottle of codeine in a suicide attempt. However, mother contends that DHS failed to establish facts sufficient to permit the conclusion that that conduct by mother poses a sufficient risk of injury or harm to J so as to allow the juvenile court to exercise jurisdiction over J under ORS 419B.100(1)(c). We agree with mother and, accordingly, reverse.

On review of a juvenile court's jurisdictional determination under ORS 419B.100(1)(c), "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's

---

[1] In the judgment on appeal, the juvenile court also asserted jurisdiction over J with respect to J's father (who is not mother's husband). The trial court's jurisdictional determinations with respect to father are not at issue on appeal.

[determination] and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).[2] ORS 419B.100(1)(c) authorizes a juvenile court to exercise jurisdiction over a person under the age of 18 "[w]hose condition or circumstances are such as to endanger the welfare of the person or of others[.]" *Dept. of Human Services v. G. J. R.*, 254 Or App 436, 443, 295 P3d 672 (2013). A person's "welfare" is "endanger[ed]" within the meaning of the statute if the person's conditions and circumstances "give rise to a current threat of serious loss or injury to the child." *G. J. R.*, 254 Or App at 443. "The key inquiry is whether, under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child." *Id.*

Here, even drawing all inferences in favor of the juvenile court's ruling, the evidence presented to the juvenile court is not sufficient to permit the conclusion that mother's act of exposing J to her husband and her mental health issues gave rise to a reasonable likelihood of harm to J at the time of the jurisdictional hearing. With respect to mother's failure to protect J from contact with her husband, the record is devoid of evidence that would permit a nonspeculative inference that mother's husband poses a risk to J that would require mother to protect J from her husband. There is no evidence that mother's husband has ever harmed J or any children in any way. Although mother's husband has a 2005 conviction for the attempted first-degree rape of an 18-year-old woman, and has not completed the sex offender treatment mandated as a condition of his post-prison supervision for that offense, those facts do not permit the conclusion that mother's husband poses a risk to J because they do not show that J "fits within the class of [mother's husband's] victims." *Id.* at 445.

Likewise, although mother's husband was subject to a no-contact-with-minors condition of probation or postprison supervision (or both), on the record in this case, that fact is insufficient to permit a non-speculative inference that mother's husband poses a risk to J. First, again,

---

[2] Neither party requests that we review *de novo*, or otherwise suggests that *de novo* review would be appropriate.

there is no evidence that any of mother's husband's offenses harmed children. Second, the DHS case worker involved with the case testified that "we really don't know what threat [mother's husband] does or does not pose to the children[.]" Third, as noted previously, there is no evidence that J suffered any harm from contact with mother's husband; to the contrary, it was undisputed that at the time J was removed from mother's home, J was a happy and healthy child with no signs of injury, even though he had had contact with mother's husband. Fourth, notwithstanding the no-contact-with-minors condition, mother's husband's probation officer permitted him to have contact with his minor nieces and nephews, although there was a safety plan in place because of the condition. Finally, the record does not disclose whether the prohibition on contact with minors was imposed as a result of the statutory package of post-prison supervision conditions applicable to *all* sex offenders[3] or whether it was imposed based on a particularized finding by either the probation court or the Board of Parole and Post-Prison Supervision that mother's husband poses a risk to minors.[4] Absent evidence showing that the condition resulted from a particularized determination that mother's husband presents a risk to children, on this record, the fact that mother's husband is subject to the condition (and the related safety plan) does not permit a nonspeculative inference that mother's husband, in fact, poses a risk to J, or to any child.

Finally, the evidence regarding mother's mental health issues also is insufficient to permit the conclusion

---

[3] ORS 144.102(4)(b) *requires* the Board of Parole or other applicable supervisory authority to impose a specified set of post-prison supervision conditions for all sex offenders, regardless of the particular nature of a person's offense or offenses. Among the required conditions is a "prohibition against contacting a person under 18 years of age without the prior written approval of the board, supervisory authority or supervising officer." ORS 144.102(4)(b)(B). That condition applies even if an individual's sex offenses did not involve children.

[4] Although mother's husband's probation officer testified during his examination by J's attorney that he agreed with J's attorney that it would be "safe to say" that the parole board thought that mother's husband needed to complete sex offender treatment to be safe around minors, that speculation as to what it might be "safe to say" the parole board thought is insufficient to support a finding that the parole board imposed the sex offender package on mother's husband based on an individualized determination of the risks posed by him, rather than on the categorical mandate of ORS 144.102(4)(b).

that those mental health issues create a reasonable likelihood of harm to J. Although mother reported to the DHS caseworker that she has some mental health issues, the record contains no evidence that mother's mental health issues harmed J, or even risked harming J, while J was in her care. Mother's most extreme act of instability stemming from her mental health issues—her consumption of a bottle of codeine in a reported suicide attempt—was a singular act in response to the traumatic event of having J removed from her care, and did not pose a risk to J because he was not in her care at the time. And the record contains no evidence that would permit the inference that the unstable mental condition that led mother to consume the codeine persisted at the time of the jurisdictional hearing, several months after mother's suicide attempt.

In sum, the evidence presented at the jurisdictional hearing is legally insufficient to permit the conclusion that, at the time of the hearing, J's conditions and circumstances—his exposure to her husband and mother's mental health issues—presented a current risk of harm to J. The juvenile court's jurisdictional determinations with respect to mother were, therefore, erroneous. *G. J. R.*, 254 Or App at 445-46.

Reversed.