Submitted April 13; on respondent's motion to dismiss filed March 23, appellant's response filed April 6, and respondent's reply filed April 13, motion to dismiss denied, reversed June 23, 2022

In the Matter of S. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. B.-L.,
*Appellant.*

Douglas County Circuit Court
21JU02843; A177162 (Control)

In the Matter of K. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. B.-L.,
*Appellant.*

Douglas County Circuit Court
21JU02844; A177163

514 P3d 131

In this consolidated juvenile dependency case, father challenges two juvenile court judgments that established dependency jurisdiction over his children, K and S. The juvenile court took jurisdiction over the children pursuant to ORS 419B.100(1)(c), having determined that the children's welfare was endangered by father and mother's "ongoing volatile and/or unsafe relationship." On appeal, father raises six assignments of error, arguing that the evidence was legally insufficient to support the jurisdictional determinations as to K and S. After father appealed, the juvenile court terminated jurisdiction and wardship over the children; consequently, the Department of Human Services (DHS) moved to dismiss the appeal as moot. Father responds that collateral consequences of the jurisdictional judgments continue to have a practical effect on him. *Held*: Cognizant of the collateral consequences identified by father, the Court of Appeals denied DHS's motion to dismiss. As to the merits, the court concluded that, although the evidence might be sufficient to show that parents had an "ongoing volatile and/or unsafe relationship with" each other, and that their relationship exposed the children to some harm, the evidence was not sufficient to show that parents' relationship posed a nonspeculative threat of serious loss or injury to the children that is reasonably likely to occur.

Motion to dismiss denied; reversed.

Jason R. Thomas, Judge.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Joel C. Duran, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Motion to dismiss denied; reversed.

**TOOKEY, P. J.**

In this consolidated juvenile dependency case, father challenges two juvenile court judgments that established dependency jurisdiction over his children, K and S. The juvenile court took jurisdiction over the children pursuant to ORS 419B.100(1)(c), having determined that the children's conditions or circumstances endangered their welfare. On appeal, father raises six assignments of error, arguing that the evidence was legally insufficient to support the jurisdictional determinations as to K and S. For the reasons that follow, we conclude that the evidence is legally insufficient to support the jurisdictional determinations as to K and S; accordingly, we reverse.[1]

Before turning to the merits, we briefly address whether this case is moot. After father appealed the jurisdictional judgments, the juvenile court terminated jurisdiction and wardship over the children, and the Department of Human Services (DHS) moved to dismiss this case as moot. Father contends that his appeal is not moot and identifies the collateral consequences "flowing from the jurisdictional judgments" that, he contends, continue to have a practical effect on him—namely, the disadvantage he would face in a subsequent DHS child-welfare investigation; his inability to obtain agency review of any future founded dispositions regarding child abuse or neglect; and the effects on his right to custody, parenting time, and visitation in future domestic relations proceedings. Cognizant of the collateral consequences identified by father, we deny DHS's motion to dismiss. *See State ex rel Juv. Dept. v. L. B.*, 233 Or App 360, 364-65, 226 P3d 66 (2010) (concluding that appeal from jurisdictional judgment was not moot where "juvenile court's judgment continues to have [effect] with respect to any

---

[1] The juvenile court asserted jurisdiction on two related bases: father's "ongoing volatile and/or unsafe relationship" with mother, and mother's "ongoing volatile and/or unsafe relationship" with father. Only father has appealed, but he challenges both bases. Because the juvenile court considered parents as a unit, and the allegations and evidence are intertwined, we conclude that both bases are properly before us on appeal. *See Dept. of Human Services v. J. J. B.*, 291 Or App 226, 231-32, 418 P3d 56 (2018) (where only father appealed, jurisdictional bases as to both parents were properly before court, as juvenile court viewed parents "as a unit" and allegations regarding mother and father were "closely intertwined").

future investigation of child's circumstances," and juvenile court's finding that "child was endangered by conditions or circumstances in the parent's home" could negatively affect parents' ability to obtain agency review of "CPS founded disposition"); *see also Dept. of Human Services v. P. D.*, 368 Or 627, 632, 496 P3d 1029 (2021) (notwithstanding juvenile court's subsequent dismissal of dependency petition, appeal was not moot where mother identified collateral consequence of "prejudice [to] her in any future domestic relations or dependency proceeding in California").

Having considered the mootness question, we turn to the merits—*i.e.*, whether DHS presented legally sufficient evidence to support the jurisdictional determinations as to K and S.

"In reviewing the juvenile court's jurisdictional determination, the question is whether [DHS] has proved, by a preponderance of the evidence, that the child's welfare is endangered by the parents' conduct." *Dept. of Human Services v. K. C. F.*, 282 Or App 12, 14, 383 P3d 931 (2016). "On appeal, we view the evidence, as supplemented by permissible derivative inferences, in the light most favorable to the [juvenile] court's determination and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Id.* In accordance with that standard, we state the following facts.

## BACKGROUND

Father has two children—K, age five, and S, age four. Father has been in a relationship with mother for seven years, during which time he and mother argued "on and off." More recently, however, the arguing had "gotten worse"; as explained below, between December 31, 2020 and June 3, 2021, father and mother quarreled four times either in or outside their home, leading to a police response each time.

On December 31, 2020, a police officer responded to a "reported disturbance" between father and mother. When the officer arrived, father explained that he and mother had engaged in a "shoving match," which involved "grabbing for a phone, and pushing." Father also stated that "he was bit

at one point" but "didn't want to press any charges" against mother. The children were asleep inside the home, and when the officer checked on them, it "appear[ed] that they had just woken up." The children "appeared jovial" and, in the officer's opinion, "weren't in any emotional distress."

On January 24, 2021, a police officer responded to a report from father that he had found a methamphetamine pipe in mother's pocket. When father found the pipe, "there was a little bit of a struggle," and he "forcefully t[ook] the pipe away from" mother, but the pipe "tumbl[ed] to the ground." During the struggle, mother and father fell on the pipe and broke it. Father admitted that the children "were inside the home and they did witness the incident." No injuries resulted from that struggle, and neither mother nor father wanted charges brought against the other.

On May 15, 2021, a police officer responded to a call from father, who explained that he and mother "had been involved in a verbal dispute that turned physical." Father told the officer that he had tried to take from mother a box containing "residue of what looked like marijuana," because "he was concerned about her using drugs," and that, "when [father] took the box, she jumped on his back and scratched" his arms. Neither father nor mother wanted charges brought against the other. At the time of the dispute, the children "were not present at all," as they were staying at their maternal grandmother's house.

On June 3, 2021, two police officers were dispatched to father and mother's home after a neighbor reported "a disturbance in a vehicle." When the officers arrived, mother and father "weren't actively physically fighting but they were engaged in a yelling match at each other." Father told the officers that mother took something that belonged to him and wouldn't return it, so he took mother's purse and tried to leave in his car, but mother "got into the car and there was some pushing and some shoving." Mother told the officers that, "during the course of th[e] confrontation, [father] pushed her and she fell down lightly scuffing" either her knee or elbow. The first officer saw what "appeared to be freshly broken glass" on the front driveway, and mother told

him that "some glass had been broken during that argument."[2] The second officer saw two children in the home "peeking their heads out the door" who did not "appear to be injured in any way."

		After the June 3, 2021, incident, DHS filed dependency petitions, alleging that the children's welfare was endangered by father and mother's "ongoing volatile and/or unsafe relationship."[3] The juvenile court held a jurisdictional trial and, ultimately, took jurisdiction over K and S, explaining:

	"Wrestling around or whatever it was that actually was the manifestation of the physicality of the conflict poses a nonspeculative threat of harm to the children, *because it is not possible to preclude that the children could be present and could themselves interpose*[.]

	"\* \* \* \* \*

	"Here, I think *the real likelihood of harm to them, the physical harm, would be an attempt at intervention by one or the other of the children which is incredibly common when children observe physical violence between the parents*. The Court does not have any serious doubt that there has been and would continue to be some level of physical violence between the parents[.]

	"At this point, the Court agrees with [DHS] that allegation (2)(b) and (2)(e) are proved to a level of preponderance to exist. That is, subjecting \* \* \* each child to the ongoing volatile and unsafe relationship with the \* \* \* other parent \* \* \* [i]n that it exposes [the children] to the possibility of violence[.]"

(Emphases added.)

---

	[2] At the jurisdictional trial, father's mother-in-law testified that "one time \* \* \* [father] stuck a pair of scissors in the wall." The juvenile court explicitly stated that "the Court did not find [mother-in-law] terribly credible," namely with respect to "her statements about father."

	[3] DHS also alleged, as to both K and S, that "mother's substance abuse interferes with her ability to safely parent the child"; that "[t]he child has been exposed to domestic violence by the mother"; that "father's substance abuse interferes with his ability to safely parent the child"; and that "[t]he child has been exposed to domestic violence by the father." Those allegations were dismissed by the juvenile court.

Father now appeals, arguing that DHS failed to meet its burden of proving by a preponderance of the evidence that the parents' "volatile and/or unsafe relationship" exposed the children to a current and nonspeculative risk of serious loss or injury that is likely to be realized. DHS responds that the evidence regarding the four incidents between December 31, 2020 and June 3, 2021, supports the juvenile court's determination, because "father's history and pattern of physically fighting with mother places [the children] at risk of serious physical harm."[4]

## ANALYSIS

"To establish a basis for juvenile court jurisdiction for purposes of ORS 419B.100(1)(c), the state must prove, by a preponderance of the evidence, that a child's welfare is endangered because, under the totality of the circumstances, there is a current threat of serious loss or injury to the child that is reasonably likely to be realized." *K. C. F.*, 282 Or App at 19 (internal quotation marks and citations omitted). Additionally, "[t]here must be a nexus between the parent's conduct or condition and harm to the child." *Id.* "[T]he state must present evidence about both the severity of the harm and the likelihood that it will occur," and "the type, degree, and duration of the harm must be such that exposure to a reasonable likelihood of that harm justifies juvenile court jurisdiction." *Dept. of Human Services v. S. D. I.*, 259 Or App 116, 121, 312 P3d 608 (2013) (emphasis added). Additionally, "[t]he threat of serious harm to the child cannot be speculative"; rather, "the child must be exposed to 'danger'"—*i.e.*, "conditions or circumstances that involve being threatened with serious loss or injury." *K. C. F.*, 282 Or App at 20 (internal quotation marks omitted).

In this case, DHS alleged that father and mother's "ongoing volatile and/or unsafe relationship" endangered the children; however, nothing in the evidence adduced at the jurisdictional trial explicitly identifies the specific type, degree, and duration of the harm that endangered the children.

---

[4] DHS also contends that father did not adequately preserve his argument below. We reject that contention without further discussion.

The evidence shows that parents' relationship involved verbal disputes and pushing and shoving; that father and mother argued or fought on at least four occasions; that father was "bit" by mother on one of those occasions, and his arms were scratched by her on another; that during the June 2021 incident, father "pushed" mother and she "fell down lightly scuffing" her knee or elbow, and there was "some broken glass" in the driveway; and that, on at least two of the four occasions, the children witnessed parents' fighting.

Though that evidence might be sufficient to show that parents had an "ongoing volatile and/or unsafe relationship with" each other, and that their relationship exposed the children to *some* harm, we do not think it is sufficient to show that parents' relationship posed a nonspeculative threat of *serious* loss or injury to the children that is reasonably likely to occur. *See K. C. F.*, 282 Or App at 20 ("[I]t bears emphasizing that a court cannot take jurisdiction over a child based solely on a risk of *some* harm." (Emphasis in original.)).

Relatedly, we have identified nothing in the record that leads us to conclude that the children were ever the object of parents' "volatile and/or unsafe" conduct, or that they were ever in such close proximity to parents' fighting so as to be "endangered" by it. *See S. D. I.*, 259 Or App at 117 ("Endanger connotes exposure to 'danger'"—*i.e.*, "the state of being threatened with *serious* loss or injury." (Emphasis added; internal quotation marks omitted.)). The evidence does show that, during the January 2021 incident, the children were in the home and observed father's "struggle" with mother regarding her meth pipe. Yet, this does not lead us to conclude that that incident posed a threat of "serious" loss or injury to the children that was reasonably likely to be realized. The same is true of the other three incidents: The record shows that, during the December 2020 incident, the children had been asleep in another room, and appeared "jovial" and not "in any emotional distress" upon waking up; that during the May 2021 incident they "were not present at all"; and that, during the June 2021 incident, they were inside their home, while parents were outside the home, either in father's car or in the driveway.

DHS contends, however, that jurisdiction is appropriate even if the parents' fighting was not directed at the children, and even if the children and parents were in different rooms during the fighting. In support of that contention, DHS points to several cases from our court—namely, *Dept. of Human Services v. A. J. G.*, 304 Or App 221, 465 P3d 293, *rev den*, 366 Or 826 (2020); *Dept. of Human Services v. T. J.*, 302 Or App 531, 462 P3d 315 (2020); and *State v. S. T. S.*, 236 Or App 646, 238 P3d 53 (2010). But each of those cases involved significant facts relating to the vulnerability of the child or risks of serious harm that are not present in this case. *See A. J. G.*, 304 Or App at 229-30 (affirming jurisdiction where child was "particularly vulnerable * * * given his need for structure and developmental services and low IQ," and child observed "ongoing incidents of domestic violence," including father "strangling" mother); *T. J.*, 302 Or App at 533, 539 (affirming jurisdiction over "vulnerable four-month-old infant," where children witnessed father "striking [mother's] face and head, causing a one-inch bleeding laceration for which mother received staples," and father "attempted to punch the five-year-old" sibling of infant); *S. T. S.*, 236 Or App at 649-50 (affirming jurisdiction over four-year-old child exposed to parents' "high-conflict relationship," where father "threw a diaper bag at mother, which gave her a black eye" and "had hit or kicked" mother while she was pregnant with second child). Consequently, we are not persuaded that those cases support dependency jurisdiction over the children in this case.

In arguing that the evidence was legally sufficient to support jurisdiction in this case, DHS also points to the juvenile court's comment that "the children *could* be present and *could* themselves interpose" in parent's fighting. (Emphases added.) Yet we have identified nothing in the record that leads us to conclude that the children had in the past, or would in the future, intervene in parents' fighting. Moreover, we have said that the "threat of harm cannot be found based on speculation," and "[i]t is not sufficient for the state to prove that a parent's conduct *could* negatively affect the child." *K. C. F.*, 282 Or App at 20 (emphasis in original).

Similarly, DHS points to the juvenile court's comment that "an attempt at intervention * * * is incredibly

common when children observe physical violence between the parents." It might be true, as a general matter, that a child's attempt at intervening when parents fight is "incredibly common." But a juvenile court may not assert jurisdiction by relying on generalizations and assumptions; instead, it must rely on evidence of the children's "specific conditions and circumstances." *Cf. Dept. of Human Services v. J. J. B.*, 291 Or App 226, 237-39, 418 P3d 56 (2018) ("[T]he juvenile court asserted jurisdiction based on generalizations *** rather than relying on evidence of [child's] specific conditions and circumstances," but "[g]eneralizations and assumptions *** are insufficient to establish jurisdiction."). But again, we have identified nothing in the record that leads us to conclude that these specific children had, or would, attempt to intervene during parents' fighting; rather, the evidence in the record relevant to these specific children points to the opposite—*i.e.*, that on the occasions where the children were even present or aware of parents' fighting, the children did not attempt to intervene. Thus, on this record, the threat of harm based on the possibility that the children could intervene in parents' fighting is impermissibly speculative.

In sum, we conclude that, though there is evidence on this record of father and mother's "ongoing volatile and/or unsafe relationship," the evidence is legally insufficient to support the court's determination that parent's relationship posed a present, nonspeculative risk of "serious" loss or injury to the children that is reasonably likely to be realized. Accordingly, we reverse.

Motion to dismiss denied; reversed.