178 January 10, 2024 No. 21

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of I. O.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

G. O.
and D. F.,
*Appellants.*

Umatilla County Circuit Court
22JU04548; A180679

Robert W. Collins, Jr., Judge.

Submitted August 15, 2023.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Joel C. Duran, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant G. O.

Kristen G. Williams filed the brief for appellant D. F.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kirsten M. Naito, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Chief Judge, and Hellman, Judge, and Armstrong, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

In this juvenile dependency case, mother and father appeal from the juvenile court's judgment asserting jurisdiction over their child, IO. We conclude that the juvenile court did not err in asserting jurisdiction on the bases challenged on appeal. We further conclude that under the totality of the circumstances, the juvenile court did not err in asserting jurisdiction over IO. Accordingly, we affirm.

Pursuant to ORS 419B.100(1)(c), "the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age" and "[w]hose condition or circumstances are such as to endanger the welfare of the person or of others." Before a juvenile court can take jurisdiction under that statute "'the state must prove, by a preponderance of the evidence, that a child's welfare is endangered because, under the totality of the circumstances, there is a current threat of serious loss or injury to the child that is reasonably likely to be realized.'" *Dept. of Human Services v. T. B.-L.*, 320 Or App 434, 440, 514 P3d 131 (2022) (quoting *Dept. of Human Services v. K. C. F.*, 282 Or App 12, 19, 383 P3d 931 (2016)).

Neither mother nor father requests *de novo* review. Thus, with respect to the juvenile court's determination of jurisdiction under ORS 419B.100(1)(c), we engage in our well-established "deferential review" of the juvenile court's ruling. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). Under that review, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the [juvenile] court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Id*. To apply that general standard in practice, we have established a three-step process. First, we "assume the correctness of the juvenile court's explicit findings of historical fact if these findings are supported by any evidence in the record." *Id*. Next, if the juvenile court did not expressly make a finding on a disputed factual issue, and if resolving that factual issue was necessary to the final determination, we assume that it "implicitly resolved the issue consistently with that disposition." *Id*. at 639-40. Finally, we "assess

whether the combination of [the first two steps], along with nonspeculative inferences, was legally sufficient to permit the trial court to determine that ORS 419B.100(1)(c) was satisfied." *Id*. at 640.

The dependency proceedings at issue in this appeal stem from an incident that occurred at parents' home in July 2022 involving parents' youngest child, IO, who was under one year old when the incident occurred. While father was holding IO, parents became involved in a disagreement, during which mother attempted to take IO from father and father grabbed mother's fingers and bent them backwards with enough force for mother to believe he was trying to break them. Father then gave IO to mother and went to a friend's house. Mother reported the incident to the police after father left.

The next day, mother moved with IO from the apartment that they shared with father into a domestic violence shelter where they stayed for 29 days, after which mother, citing safety concerns in the shelter, moved with IO back into the shared apartment; father stayed with mother and IO part of the time.

Father has a history of self-reported "anger issues" and has engaged in multiple acts of physical violence, including punching mother in the head during an argument in 2018, for which he faced an assault charge that was ultimately dismissed, and assaulting another person in July 2019, for which he was convicted. In addition, the juvenile court previously ordered that father complete a batterer's intervention program (BIP) in connection with prior dependency cases involving parents' two older children, and father was again directed to complete BIP classes as a condition of his probation for the 2019 assault, which he was required to complete by January 2023. Father had started the court-ordered BIP more than once but, at the outset of the dependency proceedings at issue in this case, had not yet completed the program.

The Department of Human Services (DHS) filed for protective custody and filed a dependency petition in September 2022, after concluding that IO was unsafe due

to the patterns of domestic violence in the home and lack of follow through with services that had been provided to the family. IO was briefly removed from parents' care. However, after a same-day shelter hearing, the juvenile court allowed for in-home placement, with maternal grandmother as safety service provider (SSP),[1] pending the jurisdictional trial. IO was returned to parents' care about a week later and they cared for him under SSP supervision until the jurisdictional trial. The SSP did not report issues to DHS during that time period.

After a jurisdictional trial, the court took jurisdiction over IO on two bases: that "mother was subjected to domestic violence by father and *** is unable to protect [IO] from exposure to father's violence," and that "father has engaged in a pattern of domestic violence with others with whom he has had a relationship, he has not successfully engaged in treatment for his conduct, addressed his violent behavior[,] or ameliorated this conduct and he is currently in [a] relationship with [IO]'s mother." The juvenile court granted legal custody and guardianship of IO to DHS for care, placement, and supervision, and directed that IO be placed at home. Mother and father timely appealed.

On appeal, mother and father raise separate and overlapping assignments of error. In mother's first two assignments of error, she challenges each basis on which the juvenile court took jurisdiction. We address mother's challenge to both bases of jurisdiction because "the allegations and evidence" regarding mother and father are "closely intertwined" and it would be inappropriate for the court to "artificially separate the allegations regarding father from those involving mother for the first time on appeal to evaluate them independently." *Dept. of Human Services v. J. J. B.,* 291 Or App 226, 231-32, 418 P3d 56 (2018). In mother's third assignment of error, and father's sole assignment of error, they argue that the juvenile court erred in asserting dependency jurisdiction over IO.

Mother presents a combined argument for her three separate assignments of error, and from that we understand

---

[1] "'Safety service provider' means a participant in a protective action plan, initial safety plan, or ongoing safety plan whose actions, assistance, or supervision help a family in managing safety." OAR 413-015-0115(66).

mother to challenge each jurisdictional basis on four grounds: (1) that DHS did not present evidence of a nexus between the allegedly risk-causing conduct and the harm to IO; (2) that DHS did not meet its burden to present the "type, degree, and duration" of the harm in sufficient particularity; (3) that DHS did not establish that IO was at risk of *serious* harm; and (4) that DHS did not meet its burden to show that the risk of harm to IO was current. Father's arguments in support of his assignment of error mirror mother's arguments. Below, we address mother's challenge to each jurisdictional basis in turn, then address parents' joint challenge to the juvenile court's assertion of jurisdiction.

We start with mother's challenge to the court's exercise of jurisdiction over IO on the basis that "father has engaged in a pattern of domestic violence with others with whom he has had a relationship, he has not successfully engaged in treatment for his conduct, addressed his violent behavior[,] or ameliorated this conduct and he is currently in [a] relationship with [IO]'s mother." Under our standard of review, the record supports the juvenile court's determination that DHS met its burden to prove this allegation. In addition, for the reasons below, the juvenile court did not err in asserting jurisdiction on this basis.

First, the record contains sufficient evidence to support a finding that DHS carried its "burden to prove that there is a nexus connecting" father's unresolved pattern of domestic violence and failure to address the pattern by completing court-ordered treatment or otherwise addressing the issue, and a risk that IO will be harmed if father continues to resort to physical violence. *Dept. of Human Services v. C. M.*, 284 Or App 521, 527, 392 P3d 820 (2017) (internal quotation marks and citation omitted). Notably, the record reflects that father continued to engage in acts of physical violence during the years-long period in which he did not complete a BIP, had not completed the program at the time of the hearing, and demonstrated a willingness to place IO in the middle of his physical confrontations.

Next, the record supports that DHS met its burden to present evidence of "the type, degree, and duration of the harm * * * such that exposure to a reasonable likelihood

of that harm justifies juvenile court jurisdiction." *T. B.-L.*, 320 Or App at 440 (internal quotation marks omitted). As recounted above, there is evidence in the record that father failed to adequately address his long-standing issues with physical violence by the time of the jurisdictional hearing, and that he exhibited a willingness to engage in that violence while holding IO. That evidence allowed the juvenile court to determine that there was a nonspeculative and reasonably likely risk that IO would be injured during a future incident of physical violence by father. *Contra id.* at 440-41 (finding insufficient evidence of nonspeculative risk of serious harm to the children where the record did not show that they "were ever the object of parents' 'volatile and/or unsafe' conduct, or that they were ever in such close proximity to their parents' fighting so as to be 'endangered' by it").

In addition, the record supports the juvenile court's determination that, by virtue of father's actions, IO was exposed to a risk of *serious* harm. *Id.* at 440 (explaining that to support juvenile court jurisdiction over a child, "the child must be exposed to danger—*i.e.*, conditions or circumstances that involve being threatened with serious loss or injury" (internal quotation marks and emphasis omitted)). The risk of physical violence to a child under one year of age is a threat of serious harm that supports juvenile court jurisdiction. *See, e.g.*, *Dept. of Human Services v. T. J.*, 302 Or App 531, 538-39, 462 P3d 315 (2020) (in determining that the record was sufficient for the juvenile court to take jurisdiction, highlighting that the child was a "vulnerable four-month-old infant" who would have no ability to protect himself from the father's physical violence).

Further, the record allowed the court to determine that father's parenting deficits created a threat of loss or injury to IO that was current at the time of the jurisdictional hearing. *Dept. of Human Services v. M. F.*, 294 Or App 688, 699, 432 P3d 1189 (2018); *see also Dept. of Human Services v. S. A. B. O.*, 291 Or App 88, 99, 417 P3d 555 (2018) (recognizing that "[our] focus must be on the child's current conditions and circumstances and not on some point in the past" (internal quotation marks omitted)). We have stated that "[w]hen a parent has participated in some services, yet

there is concern that the parent has not internalized better parenting techniques, the dispositive question is not what a parent believes, but what that parent is likely to do." *Dept of Human Services v. D. L.*, 308 Or App 295, 307-08, 479 P3d 1092 (2020), *rev den*, 367 Or 668 (2021) (internal quotation marks, ellipses, and brackets omitted). In this case, the jurisdictional basis is not predicated only on father's pattern of physical violence, but on his failure to take steps to address the issue or change his behavior, which remained true at the time of the jurisdictional hearing. *K. C. F.*, 282 Or App at 19 ("Domestic violence between parents poses a threat to children when it creates a harmful environment for the children and the offending parent has not participated in remedial services or changed [their] threatening behavior.").

We further conclude that evidence in the record allowed the juvenile court to determine that "mother was subjected to domestic violence by father and * * * [was] unable to protect [IO] from exposure to father's violence[,]" and that the juvenile court did not err in taking jurisdiction on this basis. The record demonstrates that at the time of the jurisdictional hearing, mother's circumstances posed a nonspeculative and reasonably likely risk that IO would be seriously injured when she was unable to protect him from father's physical violence.

Specifically, the record allows for a reasonable inference that mother minimized the July 2022 physical altercation and that she returned to the shared home and intended to stay in a relationship with father despite father's failure to address his issues with physical violence. The record thus supports the juvenile court's determination that there was "a nexus connecting" mother's inability to protect IO from exposure to father's violence and a risk that, when father resorted to physical violence during future altercations, IO would be harmed.[2] *C. M.*, 284 Or App at 527. In addition, as

_____

[2] Although we recognize the protective actions that mother did take, including mother's decision to remove IO from the residence and reside in a domestic violence shelter for about a month, there is evidence in the record from which the juvenile court could conclude that those protective actions did not ameliorate the serious risk to IO's safety, especially because mother resumed living with father despite father's failure to address his history of domestic violence.

we have already established in our discussion of father's conduct, the record supports that DHS met its burden to present evidence of "the type, degree, and duration of the harm" that IO was reasonably likely to face. *T. B.-L.*, 320 Or App at 440. Further, as we discussed above, it is reasonably likely that if mother failed to protect IO from father's violence, IO would be seriously injured. *Id.* Finally, based on evidence in the record as recounted above, the record supports the juvenile court's determination that at the time of the jurisdictional hearing, mother was "unable or unwilling to fully appreciate the risks posed by" father's failure to address his history of domestic violence, and thus, that mother's circumstances placed IO at a current non-speculative risk of harm. *See Dept. of Human Services v. C. A. M.*, 294 Or App 605, 619, 432 P3d 1175 (2018) (determining that there was a non-speculative risk of harm to a seven-month-old child where the mother was "unable or unwilling to fully appreciate the risks posed by [the] father, and that, as a result, [the] mother [would] not recognize or respond appropriately to situations in which [the child] is endangered" (emphasis omitted)); *see also Dept. of Human Services v. K. V.*, 276 Or App 782, 792-93, 369 P3d 1231, *rev den*, 359 Or 667 (2016) (explaining that "evidence that [the] father did not appreciate the risk that [the] mother posed to [the child] support[ed] the court's finding that [the] father was likely to fail to protect [the child] from [the] mother" where "there was nothing in the record to prove that [the] father was prepared to take action to prevent [the] mother from harming [the child]").

In determining that the risk of harm to IO was current, we consider the fact that IO lived with parents for over five months between the July 2022 incident and the juvenile court asserting dependency jurisdiction, and that within that period, "no other incidents of violence or concerning behavior by father were reported." However, because parents' interactions with IO were supervised by the court-ordered SSP, the court was not required to conclude that, *without DHS supervision*, the risk of serious loss or injury to IO would no longer be present.

Finally, we address mother and father's assignments of error that challenge the juvenile court's assertion

of jurisdiction over IO. "We have explained that 'the key inquiry in determining whether conditions or circumstances warrant jurisdiction is whether, under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child.'" *Dept. of Human Services v. A. J. G.*, 304 Or App 221, 232, 465 P3d 293, *rev den*, 366 Or 826 (2020) (quoting *Dept. of Human Services v. C. Z.,* 236 Or App 436, 440, 236 P3d 791 (2010)). Because we find that the juvenile court did not err in asserting jurisdiction on any specific basis challenged on appeal, we hold that, under the totality of the circumstances, the juvenile court did not err in asserting jurisdiction over IO.

Affirmed.