Argued and submitted July 8; judgments in case numbers 19JU05936 and 19JU05937 reversed and remanded, judgments in case numbers 18JU04934 and 18JU04939 affirmed August 19; petition for review denied November 5, 2020 (367 Or 220)

In the Matter of J. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. L. B.
and D. C. B.,
*Appellants.*

Clackamas County Circuit Court
18JU04934; A173092 (Control)

In the Matter of E. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. L. B.
and D. C. B.,
*Appellants.*

Clackamas County Circuit Court
18JU04939; A173093

In the Matter of J. B.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. L. B.
and D. C. B.,
*Appellants.*

Clackamas County Circuit Court
19JU05937; A173094

In the Matter of E. B.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. L. B.
and D. C. B.,
*Appellants.*

Clackamas County Circuit Court
19JU05936; A173095

473 P3d 610

In 2018, the juvenile court took jurisdiction over two children, E and J, based on mother's and father's stipulations that E suffered life-threatening injuries while in their care. In 2019, father was charged with assault and criminal mistreatment for causing E's injuries. DHS then filed new petitions asserting as an additional basis for jurisdiction that father had been criminally charged and mother failed to appreciate the risk he poses as a result. Mother and father each filed motions to dismiss, arguing that the record no longer supports maintaining jurisdiction on the bases asserted in 2018 and that the new 2019 petitions fail to allege facts sufficient to support taking jurisdiction. The trial court denied their motion and they both appeal renewing the same arguments. *Held*: The record supports the trial court's continuance of jurisdiction on the bases asserted in 2018. Little more than a year ago E suffered life-threatening injuries which doctors concluded were "consistent with abusive head traumas." To date, parents have not explained how those injuries occurred or taken steps to address what caused them. However, the allegations in the 2019 petition are insufficient to establish jurisdiction. The fact that father was indicted is only an accusation—it provides no new facts about any risk the children are exposed to.

Judgments in case numbers 19JU05936 and 19JU05937 reversed and remanded; judgments in case numbers 18JU04934 and 18JU04939 affirmed.

Ann M. Lininger, Judge.

George W. Kelly argued the cause and filed the brief for appellant N. L. B.

Ginger Fitch filed the brief for appellant D. C. B.

Erin K. Galli, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Judgments in case numbers 19JU05936 and 19JU05937 reversed and remanded; judgments in case numbers 18JU04934 and 18JU04939 affirmed.

**KAMINS, J.**

In this juvenile dependency case, mother and father appeal from 2018 and 2019 judgments in which the juvenile court asserted dependency jurisdiction over their children, E and J. The juvenile court took jurisdiction over both children in 2018, in two separate judgments, when E suffered unexplained, life-threatening injuries while in her parents' care. In 2019, the state filed second dependency petitions, one for each child, alleging two additional bases for jurisdiction over the children: that father had been indicted for assaulting and criminally mistreating E and that mother failed to appreciate the risks father posed as a result.

Mother and father each filed motions to dismiss both the 2018 cases and the pending 2019 petitions, arguing that the Department of Human Services (DHS) had failed to prove that the parents presented a current threat to the children's safety. The juvenile court denied each motion, concluding that DHS had met its burden. On appeal, we agree that DHS produced sufficient evidence to satisfy its burden with respect to the 2018 bases for jurisdiction. However, we conclude that the juvenile court erred in granting DHS's 2019 petitions to add two additional bases for jurisdiction. Accordingly, we reverse and remand the juvenile court's 2019 judgments, but affirm the 2018 judgments.

Neither mother nor father requests that we exercise our discretion to engage in *de novo* review, and we decline to do so. ORS 19.415(3)(b); ORAP 5.40(8)(c) (we conduct *de novo* review only in "exceptional" cases). Accordingly, in determining whether asserting jurisdiction was warranted, we assess whether the record was legally sufficient to permit the outcome that was reached. *Dept. of Human Services v. S. R. C.*, 263 Or App 506, 508, 328 P3d 814, *rev den*, 356 Or 397 (2014). In doing so, we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the juvenile court's ruling. *Dept. of Human Services v. J. E. F.*, 290 Or App 164, 166, 421 P3d 415, *rev den*, 362 Or 794 (2018). We state the facts in accordance with that standard.

In May 2018, three-month-old E experienced six days of projectile vomiting. Mother and father took her to

their medical provider, but the provider was unable to identify the cause of the problem. After the visit, the issues subsided for some time but returned again the following month. E also began experiencing seizures lasting anywhere from six to ten minutes. An MRI revealed that E had two chronic subdural hematomas, one on either side of her head, and one subdural hematoma on the right side of her brain that was "of newer origin." Further testing also revealed significant hemorrhaging in E's right eye. To treat the hematomas, surgeons had to drill burr holes into E's skull and drain the blood around her brain.

When asked how E had been injured, mother and father suggested that E's two-and-a-half-year-old brother J had caused the injuries by dropping E onto a pillow, throwing toys at her, or punching her in the face. Doctors disagreed, however, concluding that E's injuries were most likely nonaccidental and were "consistent with abusive head traumas." Following a DHS investigation, both E and J were removed from mother and father's home and placed in relative foster care.

In June 2018, DHS filed dependency petitions requesting that the juvenile court take jurisdiction over both E and J. In September 2018, the court took jurisdiction over E, based on mother's and father's stipulations that E "was diagnosed with child physical abuse, traumatic subdural hemorrhage, and retinal hemorrhage in the right eye" while in the care of her parents. The court also took jurisdiction over J on the basis of E's injuries.

In the months following the assertion of juvenile court jurisdiction, mother and father remained unforthcoming with information about how E was injured. At one point, they suggested that E's injuries may have been the result of a genetic condition, though genetic testing later ruled that out as a possibility.

In March 2019, father was criminally charged with first-degree assault, third-degree assault, and first-degree criminal mistreatment based on the injuries to E. Because his pretrial release agreement provided that he was to have no contact with E, apart from visits supervised by DHS, father moved out of the family home. Several months later,

DHS filed second dependency petitions. Those petitions alleged an additional basis for jurisdiction against father for each child: that he had been indicted for first-degree assault, third-degree assault, and criminal mistreatment for the injuries to E. The 2019 petitions also added a jurisdictional basis against mother that she failed to appreciate the risk father poses in light of his charges.

Shortly thereafter, mother and father each filed motions to dismiss both the 2018 and 2019 cases. With respect to the 2018 bases for jurisdiction, mother and father argued that DHS failed to satisfy its ongoing burden of proving that the children's circumstances posed a danger to their welfare. Furthermore, mother and father argued that, even if the facts in the 2019 petitions were taken as true, they would not satisfy DHS's burden.

The juvenile court rejected both arguments. Beginning with the 2018 bases, the court explained that the evidence demonstrated that E had suffered extremely severe injuries consistent with child abuse while in mother's and father's care. Despite these "extremely concerning" events, however, the court observed that neither mother or father had taken steps to ameliorate the risk that an injury could happen again. On the 2019 petitions, the court concluded that jurisdiction was warranted because the evidence showed a "present risk of serious[] loss or injury in a nexus between the parents['] risky conduct and that risk of harm."

Mother and father each appeal, assigning error to the juvenile court's conclusions regarding both the 2018 and 2019 bases for jurisdiction. For the reasons that follow, we affirm the juvenile court's decision regarding the 2018 bases but reverse with respect to the 2019 petitions.[1]

Under ORS 419B.100(1)(c), jurisdiction is proper over a child "[w]hose condition or circumstances are such as to endanger the [child's] welfare." A child's welfare is endangered when the child "is exposed to conditions or circumstances that present a current threat of serious loss or

_____

[1] We decline to address mother's unpreserved argument relating to a psychological evaluation. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (discussing factors for exercising plain error review).

injury." *Dept. of Human Services v. E. M.*, 264 Or App 76, 81, 331 P3d 1054 (2014) (internal quotation marks omitted). In assessing whether jurisdiction is proper, we look to the totality of the circumstances to determine whether there is a reasonable likelihood of harm to the welfare of the child. *Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010). DHS bears the burden of proving that a risk of harm is present and nonspeculative at the time of the hearing and that there is a nexus between that risk-causing conduct of the parents and harm to the child. *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 62, 308 P3d 307 (2013).

Once jurisdiction has been established, so long as the permanency plan remains reunification, DHS bears the burden of demonstrating that the original bases for jurisdiction continue to pose a threat of serious loss or injury. *Dept. of Human Services v. T. L.*, 279 Or App 673, 687, 379 P3d 741 (2016). We evaluate motions to dismiss ongoing jurisdiction according to a two-part inquiry. *Id.* at 684. First, we determine whether the original bases for jurisdiction continue to pose a threat of serious loss or injury. *Id.* at 685. If so, we then assess the likelihood that the risk of loss or injury will be realized. *Id.*

We begin with the 2018 bases for ongoing jurisdiction. Both parents argue that, although the injuries E suffered in their care may at one point have provided a basis for jurisdiction, the record no longer supports a conclusion that E's and J's welfare are endangered. In her case, mother argues that DHS personnel's own statements demonstrate that she poses no serious risk of harm to the children. Indeed, the testimony at trial indicated that the DHS case worker believed that mother is able to meet the children's basic needs, that she is bonded and attached to her children, and that DHS had observed no safety concerns while the children are in mother's care. Given that testimony and the fact that, in her view, DHS never articulated a specific risk of harm that she presents, mother argues that dismissal is appropriate.

Likewise, father argues that, during the five months that he was living in the home with a safety supervisor,

there was no evidence that he posed any risk to the children's welfare. Further, since the issuance of the no-contact order, he argues that he has complied with all conditions of his pretrial release order and that his supervised visits with the children have been positive.

We reject these arguments. When viewed in the light most favorable to the juvenile court's decision, the record supports the conclusion that the children are at risk of serious harm. Little more than a year before the hearing, E suffered serious, life-threatening injuries on more than one occasion. Doctors concluded that her injuries were consistent with "abusive head trauma" and having been "shaken aggressively." When asked about the injuries, mother and father could not, and still cannot, provide an explanation consistent with the physical evidence.

Although we recognize that "it is not sufficient for the state to prove that the child's welfare was endangered sometime in the past," *Dept. of Human Services v. F. Y. D.*, 302 Or App 9, 19, 459 P3d 947 (2020), the injury here was recent and affirmatively diagnosed as child physical abuse. Additionally, parents stipulated that the child suffered the injury while in their care. As a DHS case worker testified, without parents' understanding as to how the injury occurred to an infant in their sole custody and care, the bases for jurisdiction have not been addressed or ameliorated. Moreover, as the juvenile court recognized, during the entirety of the relatively brief time since the injuries to E were discovered, the family has been under a DHS safety plan which could alone explain the fact that the children have not suffered additional injuries.

For the same reasons, the record was sufficient to permit the juvenile court to conclude that the risk is likely to be realized. We have previously observed that one important measure of whether a risk is likely to be realized is whether parents have taken steps to ameliorate the original bases for jurisdiction. *T. L.*, 279 Or App at 685. Here, the record contains no evidence of any steps that either mother or father has taken to address the fact that their infant child sustained life-threatening injuries in their care without explanation. The record allows for the inference that,

to date, mother and father do not appear to recognize the importance of the safety protocols, nor have they participated in any services specifically tailored toward preventing the injury from happening again.

Indeed, mother testified that her reason for continuing safety protocols would be "[b]ecause my family is under scrutiny and *** [m]y husband is under scrutiny from the DA's Office and from the DHS office and I do not want to do anything that is going to result in DHS taking custody back of my children." From mother's response, the trial court could have inferred that mother's primary motivation is avoiding further scrutiny, not mitigating the risk to E's and J's safety. For these reasons, we conclude that the record contained sufficient evidence to support the juvenile court's continued exercise of jurisdiction on the bases asserted in 2018.

Next, we turn to the 2019 additional bases for jurisdiction. In evaluating the juvenile court's decision to add a basis for jurisdiction, "we examine whether sufficient evidence exists, from which a reasonable factfinder could conclude by a preponderance of the evidence, either that a current risk of harm to [the child] exists from the additional allegation standing alone, or that the additional allegation contributes to or enhances the risk associated with the already established bases of jurisdiction." *Dept. of Human Services v. S. A. B. O.*, 291 Or App 88, 99, 417 P3d 555 (2018) (quoting *S. R. C.*, 263 Or App at 511).

DHS contends that the indictment meaningfully enhances the 2018 bases by showing that father is facing serious criminal charges for E's injuries and that mother has failed to acknowledge the risk he presents to the children as a result. Additionally, DHS argues that the no-contact order issued as a result of the charges contributes to the risk to the children by rendering father unable to parent them.

We reject DHS's argument. The district attorney's issuance of an indictment does not enhance the 2018 bases for jurisdiction. As mother and father point out, an indictment is merely an accusation that a named individual has committed a crime. An indictment alone does not establish

any facts about a case or provide any new information about how the individual charged poses a risk of harm to others. Although the criminal charges did include a no-contact order restricting father's ability to parent his children, we have some difficulty seeing how this would enhance any risk of serious loss or injury for the children. The record contains no evidence to suggest that mother is incapable of meeting the children's needs without father. Indeed, DHS's reports appear to support the opposite conclusion. If anything, the no-contact order's strict restrictions on father's interactions with the children supports an inference that the order *reduces* the children's risk of harm. DHS has failed to meet its burden of proving any nexus between the indictment and any harm to the children whether the indictment is viewed alone or in connection with the established bases for jurisdiction. Accordingly, we conclude that the juvenile court erred in concluding that the allegations in the 2019 petitions were sufficient to establish jurisdiction over E and J.

In sum, the record supports the juvenile court's determination that jurisdiction remains warranted on the bases asserted in 2018 but does not support its determination that the bases alleged in the 2019 petitions provide grounds for dependency jurisdiction.

Judgments in case numbers 19JU05936 and 19JU05937 reversed and remanded; judgments in case numbers 18JU04934 and 18JU04939 affirmed.