No. 397     May 13, 2026     399

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of C. V.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. T.
and K. V.,
*Appellants.*

Multnomah County Circuit Court
24JU05821; A188495 (Control), A188260

In the Matter of L. V.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. T.
and K. V.,
*Appellants.*

Multnomah County Circuit Court
24JU05825; A188497, A188261

Morgan Wren Long, Judge.

Argued and submitted March 19, 2026.

Christa Obold Eshleman argued the cause for appellant A. T. Also on the brief was Youth, Rights & Justice.

Tiffany Keast, Deputy Public Defender, argued the cause for appellant K. V. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Stacy M. Chaffin, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Paul L. Smith, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Reversed.

**EGAN, J.**

In this consolidated juvenile dependency case, parents appeal jurisdiction and disposition judgments concerning their children, L and C, who were 11 months old and two years old, respectively, at the time of the jurisdiction trial. In nine assignments of error, father challenges the assertion of jurisdiction as to each child, the bases on which the juvenile court asserted jurisdiction over each child, and the part of each judgment that ordered father to undergo a psychological evaluation. In two assignments of error, mother challenges the assertion of dependency jurisdiction as to each child. Finding that the evidence in the record was insufficient to support the assertion of jurisdiction over the children, we reverse.

We review the juvenile court's assertion of dependency jurisdiction for sufficient evidence to support its judgment. *Dept. of Human Services v. N. L. B.*, 306 Or App 93, 96, 473 P3d 610, *rev den*, 367 Or 220 (2020). In doing so, we "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the juvenile court's disposition and assess whether, when so viewed, the record was legally sufficient to permit the outcome." *Dept. of Human Services v. T. L. H. S.*, 292 Or App 708, 709, 425 P3d 775 (2018).

In November 2024, Oregon Department of Human Services (ODHS) petitioned the juvenile court to take dependency jurisdiction over L and C following the hospitalization of L with symptoms consistent with non-accidental abusive head trauma when she was just three months old. The injuries required emergency surgical intervention, and L has ongoing needs related to the injuries and intervention. Tests revealed the presence of both chronic and acute bleeding in subdural hematomas, suggesting at least two separate episodes of abuse significant enough to cause life-threatening brain injuries.

On the morning of the hospitalization, L had been at various stages in the sole care of all three adult caregivers living in the home at the time: mother, father, and grandmother. An ODHS investigation determined that there was

no evidence to support that mother or grandmother inflicted L's injuries and that there was not enough evidence to determine whether father was responsible. At the time of the trial, law enforcement was investigating potential criminal charges related to the injuries. Parents, while understanding the nature and severity of L's injuries, said at the time of the injuries and maintained at trial that they do not know how the injuries occurred. They have further maintained that the injuries could not have been intentionally inflicted by a caregiver, despite professional opinions to the contrary.

Both children were removed from the home for a short time before being returned. Upon the children's return to the home, the family was under 24-hour supervision by professional and community or family safety service providers (SSPs). None of the SSPs reported any concerns regarding safety and, after just two months, supervision was reduced to scheduled and unannounced visits by ODHS. SSPs that have provided in-home supervision and professionals providing parenting education in the home have reported that the parents display better-than-average parenting skills and that neither parent has displayed any concerning behaviors, signs of impatience, low frustration tolerance, or impulsivity. At the time of the jurisdiction trial, the children had been back in the home for over six months without incident or concern.

During those six months, parents voluntarily engaged in parenting education services with multiple agencies, both on their own and through ODHS referrals. Education has taken place both outside of and inside the home. In-home providers discussed coping strategies for parents faced with stressful situations. Many of the courses that parents have taken have focused on foundational parenting skills, with one session focused on child abuse and "shaken baby syndrome," at which the parents received a handout on the topics.

Based on many of the facts above, before the jurisdictional trial, ODHS argued to dismiss the petition for dependency jurisdiction it had filed. The court denied that motion, and the district attorney argued for the assertion of jurisdiction, while ODHS joined the parents in arguing against

jurisdiction.[1] Ultimately, the juvenile court determined that the district attorney proved that dependency jurisdiction was warranted and asserted such jurisdiction over both L and C on amended bases 4A and 4B, and with an additional amended basis 4C applicable to jurisdiction over C.

As part of its findings supporting dependency jurisdiction, the juvenile court found that a lack of foundational parenting skills did not seem to have contributed to L's injuries but also that parents nonetheless needed more education specific to child abuse and abusive head trauma injuries, including "shaken baby syndrome." Further, the juvenile court found that the parents were not given guidance on how to cope with stressful situations at times when either was the sole caregiver of the two children, as seemed to be the case on the morning of L's injuries. The guidance the parents received suggested taking a walk or asking for help, which requires the presence of multiple caregivers.

While the juvenile court acknowledged that the parents had displayed care and concern for L's well-being, had been engaged in services and education, and that all professionals who had observed the family commended their parenting skills, the court was concerned that the most-likely perpetrator—father—had not yet been left alone to care for the children. Further, in what seems to have been a primary basis for the assertion of jurisdiction, the juvenile court determined that

> "[t]he parents' inability to offer any explanation or to acknowledge that L's injuries were inflicted raises serious concerns about their capacity to protect the children, comply with case plans, or benefit from services without further evaluation."

Given its findings of fact, the juvenile court asserted jurisdiction over both children, as to each parent, on bases 4A and 4B, with an additional basis, 4C, for jurisdiction over C. Because bases 4A and 4B apply to mother and father, respectively, and are repeated as to each child, we offer that basis here in a consolidated manner:

---

[1] Under ORS 419B.875(1)(a), "the state" and, when it is the petitioner, the Department of Human Services are independent parties to proceedings in the juvenile court that are initiated under ORS 419B.100. ORS 419B.875(1)(a)(D), (G)(i).

"While in the legal custody of [parents], [L] suffered serious non-accidental injuries. [Parents have] not provided a plausible explanation for [L's] abusive head trauma. Despite clear findings from multiple medical experts, [parents have] been unable or unwilling to acknowledge that [L's] injuries were inflicted by a caregiver, impairing [their] ability to protect [the children] from life-threatening abuse and placing [the children] at risk of harm."

The juvenile court may assert dependency jurisdiction over a child when the child's condition and circumstances expose the child to a current, nonspeculative threat of serious loss or injury that will likely be realized. ORS 419B.100(1)(c); *Dept. of Human Services v. A. L.*, 268 Or App 391, 397-98, 342 P3d 174 (2015); *Dept. of Human Services v. J. H.*, 292 Or App 733, 738, 425 P3d 791 (2018). The party that petitions for dependency jurisdiction, usually and in this case ODHS, bears the burden to prove a risk present at the time of trial; proof of harm or a risk in the past is insufficient. *State v. S. T. S.*, 236 Or App 646, 238 P3d 53 (2010). To do so, ODHS must demonstrate a nexus between the allegedly risk-causing conditions and circumstances and a nonspeculative threat of harm to the child of the type, degree, and duration that will justify juvenile court intervention into the constitutionally protected family sphere. *Dept. of Human Services v. S. D. I.*, 259 Or App 116, 121, 312 P3d 608 (2013) ("To do so, the state must present evidence about both the severity of the harm and the likelihood that it will occur.").

The juvenile court may only assert jurisdiction if, under the totality of the circumstances at the time of the trial, there is a reasonable likelihood of serious harm to the child. *Dept. of Human Services v. H. H.*, 266 Or App 196, 204, 337 P3d 929 (2014), *rev den*, 356 Or 837 (2015). In accordance with that standard, we have rejected a categorical approach asserting jurisdiction "any time there is an unexplained injury and ODHS asserts that it cannot create a safety plan without knowledge of how it occurred." *Dept. of Human Services v. J. M.*, 275 Or App 429, 442, 364 P3d 705 (2015), *rev den*, 358 Or 833 (2016). Similarly, "a parent's unwillingness to admit to every fact found by the juvenile court, or failure to take full responsibility for past actions, does not in

and of itself give the court jurisdiction over a child." *Dept. of Human Services v. T. D. G.*, 301 Or App 474, 474-75, 455 P3d 591 (2019). A parent's failure to acknowledge the extent or consequences of their past actions is a factor the court may consider when deciding to assert jurisdiction "only if there is evidence that the parent's failure to do so makes it likely that the parent will engage in the conduct again." *Dept. of Human Services v. L. C.*, 267 Or App 731, 743, 343 P3d 645 (2014).

In support of its argument that jurisdiction was authorized under ORS 419B.100(1)(c)—a position opposite its stance below—ODHS cites a number of cases in which we have upheld the assertion or continuation of jurisdiction when one or both parents have "failed to acknowledge" or "appreciate the risk" of harm to their children posed by the other parent. However, in many of those cases, significant other factors supported the juvenile court's determination. *See, e.g.*, *Dept. of Human Services v. C. A. M.*, 294 Or App 605, 432 P3d 1175 (2018) (mother was reluctant to acknowledge the threat posed by father after one of their two children died in the care of father, and father had previously been investigated for abusing an infant and convicted of assault after a physical altercation with another adult); *Dept. of Human Services v. K. V.*, 276 Or App 782, 369 P3d 1231, *rev den*, 359 Or 667 (2016) (mother did not appreciate the risk posed by father where father had a long history of substance abuse and domestic violence in the presence of the child, including one physical altercation while mother was holding the infant); *cf. State ex rel Juv. Dept. v. Ostrer*, 172 Or App 571, 19 P3d 980, *rev den*, 332 Or 326 (2001) (mother's parental rights terminated not only because she did not appreciate the threat caused by her partner but also due to a history of abusive relationships, her own mental health issues, and failure to complete programs necessary for improvement).

However, two cases are close analogs to the one before us now: *Dept. of Human Services v. H. H.*, 266 Or App 196, 337 P3d 929 (2014), *rev den*, 356 Or 837 (2015), and *Dept. of Human Services v. N. L. B.*, 306 Or App 93, 473 P3d 610, *rev den*, 367 Or 220 (2020).

In *H. H.*, we determined that the dependency jurisdiction was warranted after an infant had twice been severely injured in the father's care in short succession. 266 Or App at 205. It was notable to us that, shortly after the infant suffered a broken femur while in the father's sole care, the father left the home for work for about three months, during which time the infant was uninjured. *Id.* at 204. Six days after the father returned, while again under the sole care of the father, the infant was hospitalized with injuries consistent with abusive head trauma. *Id.* Despite those occurrences and having herself been assaulted by the father in the past, the mother maintained that the father did not abuse the child. *Id.* at 200, 205. Further, she did not think that the father was a risk to the safety of their children, stating that, should jurisdiction be denied, the family would "probably function relatively the same" as it had before. *Id.*

There are similarities between the facts in *H. H.* and the case before us, each involving injuries consistent with nonaccidental head trauma and parents that have not acknowledged the source of those injuries. However, the mother's indifference to two separate forms of apparent abuse so directly related to the infant being in the father's care makes *H. H.* distinguishable from the case before us, where both parents have recognized the dire severity of L's injuries and have eagerly engaged in services to improve their parenting skills to protect against the risk of such injuries in the future.

In *N. L. B.*, we decided that continuing dependency jurisdiction was appropriate because the original bases for jurisdiction still posed a threat that was likely to be realized. 306 Or App 101. In that case, the infant was diagnosed with brain injuries resulting from child physical abuse that occurred while in the care of the parents. *Id.* at 97. Over a year after the infant had suffered the injuries, during which time father had been indicted for first-degree assault, third-degree assault, and criminal mistreatment for the injuries to the infant, the parents had still not provided an explanation for the injuries consistent with the diagnosis. *Id.* at 98, 100. While no further injuries to the family's children had occurred in the year since jurisdiction had been taken and

safety workers had expressed no concern about the mother's parenting, the family had been under an ODHS safety plan for the entire duration. *Id.* at 100. Like in *H. H.*, the mother made statements that led the juvenile court to infer that cooperation with the safety plan was solely to avoid further scrutiny rather than a real concern for the safety of their children. *Id.* at 101. That the family had engaged in no services designed to prevent further child abuse was further evidence that the parents were doing the bare minimum with little concern for their children's safety. *Id.* at 100-01. All of those facts taken together, we decided, provided sufficient evidence to support the juvenile court's decision to continue dependency jurisdiction over the family's children. *Id.* at 101.

The case before us, though similar to *H. H.* and *N. L. B.*, is distinguishable in important respects. Here, parents have expressed their concern and understanding for the severity of the injuries that L suffered and have sought to better understand them. There is evidence that, after seeking prompt emergency care, they asked thoughtful questions of medical professionals throughout the process of L's recovery. They have taken a host of parenting education classes, both on their own initiative and upon referral by ODHS, including a class that contained a segment on child abuse and shaken baby syndrome. By all professional accounts, from both ODHS officials and other parenting professionals, not only have there been no concerns about their parenting abilities, but both parents have provided exceptional care to both children, including by meeting L's heightened needs following the injuries. Mother has decided to discontinue nursing school so that she can be in the home more consistently with the children. Father has expressed a desire to receive mental health therapy to help cope with the stress of the situation that the family is in.

All of those factors prompted ODHS to move to dismiss the petition for dependency jurisdiction before the trial. ODHS had already removed twenty-four-hour safety service requirements and, for the four months leading up to the trial, had only monitored the family through unannounced and scheduled home visits. The parents were welcoming of

the visits and safety professionals found the children safe and well cared for throughout.

No one denies that L suffered gravely serious injuries as an infant. The evidence shows that those severe, life-threatening injuries were most likely inflicted by a caregiver and were most likely the result of shaking. It would certainly be preferable to have a clear explanation from the parents as to how L was injured or at least an acknowledgment by them that L's injuries were most likely inflicted by a caregiver. However, without some evidence on the record linking that lack of explanation or acknowledgement to a current, nonspeculative risk to the safety of L and C, the juvenile court cannot assert dependency jurisdiction over the children. *L. C.*, 267 Or App at 743; *J. M.*, 275 Or App at 442; *see also Dept. of Human Services v. J. M.*, 260 Or App 261, 268, 317 P3d 402 (2013) ("The dispositive question in this case is not what father believes, but what he—at the time of the hearing—is likely to *do*." (Emphasis in original.)). We have determined that such evidence is lacking from this record.

Accordingly, we agree with parents on each of mother's assignments of error and father's assignments of error one through four, six, and seven, that the trial court erred in asserting dependency jurisdiction over both L and C. Because basis 4C, asserting jurisdiction over C, was also based on "the parents [having] been unable or unwilling to acknowledge" physical abuse, we conclude that the juvenile court likewise erred in finding that basis proved. Having so decided, we need not reach father's assignments of error eight or nine, challenging the part of the judgments ordering father undergo a psychological evaluation, because we are reversing the judgments.

Reversed.